<pre>
 1
 2
 3
 4
 5
 6
 7
 8                    UNITED STATES DISTRICT COURT
 9                   CENTRAL DISTRICT OF CALIFORNIA
10                          WESTERN DIVISION
</pre>

| | |
|---|---|
| SCOTT ADAM GALECK,<br><br>              Plaintiff,<br><br>       v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>              Defendant. | Case No. 2:18-cv-00131-JDE<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Scott Adam Galeck ("Plaintiff") filed a Complaint on January 4, 2018, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute. The matter now is ready for decision.

## I.

## BACKGROUND

Plaintiff filed an application for DIB on July 24, 2014, alleging disability commencing on June 17, 2013. Administrative Record ("AR") 178-79. After his application was denied initially (AR 105-08) and on reconsideration (AR

114-17), Plaintiff requested an administrative hearing (AR 118-21), which was held on March 30, 2016. AR 41-85. Plaintiff, represented by an attorney, appeared and testified before an Administrative Law Judge ("ALJ").

On July 18, 2016, the ALJ issued a written decision finding Plaintiff was not disabled. AR 19-40. The ALJ found Plaintiff had not engaged in substantial gainful employment since June 17, 2013 and suffered from the severe impairments of cervical and lumbar spine degenerative disc disease. AR 24. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 27. The ALJ also found Plaintiff had the residual functional capacity ("RFC") to perform the demands of light work as defined in 20 C.F.R. § 404.1567(b) involving occasional use of Plaintiff's dominant right hand (AR 27):

> [T]he regulations define light work as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in seated position.

The ALJ found Plaintiff was not capable of performing his past relevant work, but considering Plaintiff's age, education, work experience, and RFC, he was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. AR 31. Accordingly, the

ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act. AR 31. On November 3, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-6.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Id. at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may

reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

### B. **Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of

the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he is disabled, or he meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 2):

Issue No. 1: Whether the ALJ erred in failing to weigh or otherwise explain why Allan Phillips's, M.D. ("Dr. Phillips") opinion was rejected and whether it was error for the ALJ to fail to include any mental limitations in the RFC determination; and

Issue No. 2: Whether the ALJ erred in failing to weigh Edward D. Betz's, M.D. ("Dr. Betz") opinion regarding the physical RFC determination.

**A.  Dr. Phillips and Mental Limitations**

1. Applicable Law

At Step Two of the sequential evaluation process, the claimant has the burden to show that he or she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a

continuous period of at least twelve months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at Step Two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); accord § 416.921(a). "An impairment or combination of impairments may be found not severe 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (internal citation omitted). Thus, applying the applicable standard of review to the requirements of Step Two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id. at 688 (requiring analysis beyond Step Two where there was not a "total absence of objective evidence" of a severe impairment).

    2. Analysis

  Plaintiff argues the ALJ did not properly consider the weight accorded to the opinion of Dr. Phillips, a treating physician, and failed to include any mental limitations in the RFC determination.

  In November of 1993, Dr. Phillips first started treating Plaintiff for behavioral, emotional, and learning problems. AR 370,379, 386, 389, 429, 432, 435, 622-25. Dr. Phillips continued to treat Plaintiff in 1996 (AR 428); 1998

(AR 427); 1999 (AR 426); 2000 (AR 370, 379-80, 423, 425-26); 2002 (AR 424); 2004 (AR 423); 2006 (AR 422); 2008 (AR 422); 2010 (AR 386, 421); 2011 (AR 389); 2014 (AR 420, 435); and 2016 (622-25).

In 1993, Dr. Phillips observed Plaintiff had "real" challenges at school, was "very behind," and had difficulties learning to read. AR 432. In 1996, Dr. Phillips observed Plaintiff "was still quite slow," had "obsessive preoccupations," and was "still lagging in math and reading." AR 428. In 2000, Dr. Phillips noted Plaintiff had "severe learning disabilities, attention deficit disorder, and depression." AR 370. Dr. Phillips noted Plaintiff was taking several different psychotropic medications for his conditions, and Plaintiff had ongoing problems with impulse control, poor social judgment, and risk-taking behavior. Id. In 2002, Dr. Phillips opined Plaintiff had "severe behavioral and emotional problems." AR 424. By 2003, Dr. Philips indicated he planned to be involved on an "ongoing basis" with Plaintiff's treatment. AR 380. In 2006, Dr. Phillips noted Plaintiff's recent violent episode and ongoing risk taking. AR 422. In 2008, Dr. Phillips noted Plaintiff's prescription was no longer working, Plaintiff had anger problems, and Plaintiff had "real depression." Id. In 2010, Dr. Phillips observed Plaintiff had "obsessional preoccupations" and had decreased ability to focus. AR 421. Dr. Phillips also noted Plaintiff had mood lability and depression. AR 386. In 2014, Dr. Phillips opined Plaintiff had "always struggled with multiple disabilities including severe learning disabilities, developmental delays in socialization skills, and more recently with emotional dyscontrol." AR 435. Lastly, in 2016, Dr. Phillips completed a detailed mental impairment questionnaire that indicated Plaintiff had sixteen "extreme" and four "marked" mental impairments in the categories of: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. AR 622-25. Dr. Phillips opined Plaintiff had the impairments listed in the questionnaire since 1993. AR

625.

The ALJ found Plaintiff had no more than a slight psychiatric impairment that did not cause more than a minimal effect on his ability to perform basic work-related activities and therefore, was non-severe. AR 26. The ALJ found Plaintiff had no more than mild limitations in the first three broad functional areas used to determine severity—activities of daily living, social functioning, and concentration, persistence, or pace—and no episodes of decompensation that have been of extended duration in the fourth area. Id.

In reaching his decision, the ALJ relied upon four bases: (1) Plaintiff submitted no evidence of any inpatient or ongoing outpatient mental health treatment as an adult; (2) Plaintiff submitted no evidence of an ongoing treatment relationship with Dr. Phillips beyond 2003, despite Dr. Phillips later, identical notes over the years ; (3) no treating or examining medical source since Plaintiff became an adult assessed Plaintiff as wholly disabled due to psychiatric impairments; and (4) Plaintiff's allegations of diminished memory, concentration, and incapacity to perform daily living activities without assistance of a caregiver or family member was unsupported. Id.

Plaintiff contends the medical evidence supports a finding of severe mental impairment. JS at 21. First, Plaintiff argues the ALJ did not properly consider Dr. Phillips's May 2016 mental impairment opinion. Jt. Stip. at 18-19. Second, Plaintiff argues Dr. Phillips's opinion shows Plaintiff was wholly disabled due to mental impairments. Jt. Stip. at 19-20. Third, Plaintiff contends the mental health evidence shows severe mental impairments throughout adolescence to adulthood. Jt. Stip. at 21-22. Lastly, Plaintiff contends Dr. Phillips's treatment was ongoing from 1993 onward. Jt. Stip. at 22-23.

The Commissioner maintains that substantial evidence supports the ALJ's decision. Jt. Stip. at 23. The Commissioner argues Dr. Phillips's treatment session notes with Plaintiff between 2004 and 2008 "fail to

8

undermine the ALJ's reasoning that Dr. Phillips's opinion of Plaintiff's condition at times relevant to his alleged onset of disability lacked the support of little if any recent treatment evidence." Jt. Stip. at 25. The Commissioner also contends the ALJ properly reasoned that Dr. Phillips's opinion that Plaintiff had severe mental limitations lacked support because: (1) Plaintiff had been able to work full-time in 2010; (2) Plaintiff stated he was "swamped" with work in 2010; and (3) Plaintiff testified he had been able to work at his hearing. Id. Lastly, the Commissioner argues the opinions of two state agency mental health experts were substantial evidence supporting the ALJ's opinion. Jt. Stip. at 26.

Here, at Step Two, substantial evidence does not clearly establish the non-severity of Plaintiff's mental impairments. To the contrary, in 2016, Dr. Phillips found Plaintiff had sixteen "extreme" mental impairments and four "marked" mental impairments in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. AR 622-24. Dr. Phillips had been a treating physician to Plaintiff since 1993, and the record details ongoing treatment from early childhood through adulthood in the years of 1993 to 2016. AR 370, 379-80, 386, 389, 420-32, 432, 435, 622-25. The ALJ noted "Dr. Phillips provided a May 2016 medical source statement in which he assessed the claimant with moderate to extreme deficits in nearly all areas of work-related mental functioning." AR 25. However, the ALJ never addressed Dr. Phillips's 2016 mental impairment findings in his Step Two analysis, offering no reason for discounting the treating physician's opinion. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (stating the ALJ must discuss significant and probative evidence); Reddick v. Chater, 157 F.3d 715, 722-24 (9th Cir. 1998) (noting an ALJ's findings "must be supported by specific, cogent reasons" and "[w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear

9

and convincing' reasons supported by substantial evidence"). Findings of "extreme" and "marked" mental impairments would appear to have more than a "minimal effect" on a claimant's ability to work, Webb, 433 F.3d at 686, because an individual's ability to work turns, at least in part, on his or her ability to handle work-related stress. See 20 C.F.R. § 416.921(b)(5) (basic work activities include "[r]esponding appropriately to . . . usual work situations"). Indeed, with respect to such concentration, social functioning, and discipline-related limitations, a non-severe finding is generally appropriate if such limitations are rated as "none" or "mild." See 20 C.F.R. § 416.920a(d)(1). By inference, Plaintiff's "extreme" and "marked" mental impairments would appear to be severe at Step Two. See Hacker v. Astrue, No. 10-0039, 2011 WL 2496580, at *4 (C.D. Cal. June 22, 2011). At a minimum, Dr. Phillips' findings should have been expressly considered and addressed by the ALJ at Step Two.

    The Commissioner's arguments in support of the ALJ's findings at Step Two, set forth above, were never raised by the ALJ in his decision. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1225 (9th Cir. 2009); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.") The ALJ did not justify his findings on Plaintiff's ability to work full-time in 2010, his having been "swamped" with work in 2010, or Plaintiff's testimony he had been able to work at his hearing. Further, the ALJ never raised or cited to the opinions of

the two state agency mental health experts in support of his Step Two findings. This Court cannot engage in post hoc rationalization in an attempt to intuit reasons not set forth by the ALJ.

The ALJ's assignment of little weight to the opinion of Dr. Phillips for purposes of the analysis at Step Two is not supported by substantial evidence. See Tackett, 180 F.3d at 1102 ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).

### B. Dr. Betz and Physical Limitations

#### 1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. § 416.902. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted,

11

however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray, 554 F.3d at 1228.

 2. Analysis

Plaintiff argues the ALJ did not properly consider the opinion of Dr. Betz, an examining physician, in determining Plaintiff's physical RFC.

On January 27, 2016, Dr. Betz completed a medical source statement outlining Plaintiff's limitations from neuropathy and right hand drop. AR 583-84. Dr. Betz indicated he had been treating Plaintiff since June 2014 but offered no opinion on when Plaintiff's limitations and restrictions had begun. AR 585. Dr. Betz indicated Plaintiff's prognosis was poor and opined the following: Plaintiff's attention and concentration to complete simple work-related tasks would often be affected due to pain; Plaintiff's medications caused blurred vision and drowsiness; Plaintiff would require extra breaks in addition to normal workday breaks (every thirty minutes lasting ten minutes in duration); Plaintiff could sit for 10 minutes at most at a time and could not sit for one hour in an eight-hour workday; Plaintiff could stand/walk for ten minutes at a time but could not do so for one hour in an eight-hour workday; Plaintiff could never left any weight; Plaintiff could not use his right hand, fingers, or arms for any work related functions; and Plaintiff would need to miss work more than four times per month as a result of his impairments or treatment. AR 583-84.

In the opinion, the ALJ did not mention Dr. Betz or the work limitations set forth by Dr. Betz. Instead, the ALJ found the available medical evidence prior to September 2013, Plaintiff's date last insured for disability benefits

("date last insured")[1], did not support Plaintiff's subjective allegations. AR 28 (emphasis added).

Plaintiff contends the ALJ erred in not considering Dr. Betz's opinion because an ALJ must evaluate every medical opinion received. Jt. Stip. at 29. Further, Plaintiff argues the ALJ's failure to consider Dr. Betz's opinion solely because it was rendered outside the relevant period was error since the record shows significant impairments that began before 2014. Jt. Stip. at 30. The Commissioner contends the ALJ did not err in discounting Dr. Betz's opinion because the opinion lacked support, lacked probative value, and was rendered three years after the date Plaintiff was last insured for benefits. Jt. Stip. at 31-33.

Having carefully reviewed the record, the Court finds that the ALJ erred in disregarding Dr. Betz's opinion.

In reaching conclusions based upon medical evidence, an ALJ must discuss significant and probative medical evidence and, if rejected or discounted, explain why such evidence is rejected or discounted. See Robbins, 466 F.3d at 883; Vincent, 739 F.2d at 1395; Brown-Hunter, 806 F.3d at 492. The Ninth Circuit has made clear that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (emphasis added). Further, "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." Id.

Here, the ALJ did not reference or address the limitations set forth by Dr. Betz or incorporate those limitations in the RFC or in hypothetical questions posed to the vocational expert ("VE"). Because the limitations are

---

[1] Plaintiff's date last insured was September 30, 2013. AR 22. All medical records from after September 30, 2013 are classified as being from after the date last insured.

13

significant and probative to the issue of disability, the ALJ should have addressed those work-related limitations. The ALJ's failure to do so was error. See Wiley v. Astrue, 2010 WL 3521786, at *3 (C.D. Cal. Sept. 7, 2010) (finding ALJ's failure to address non-treating doctor's opinion from nearly two years after date last insured was error because opinion was "arguably relevant" to issue of disability); Herrera v. Astrue, 2009 WL 3247184, at *6-7 (C.D. Cal. Oct. 6, 2009) (finding ALJ could not reject doctor's opinion from nearly three years after date last insured without providing a "specific and legitimate reason" for doing so).

Although the opinion was rendered almost two and a half years after Plaintiff's date last insured, the opinion addresses significant physical limitations, such as Plaintiff's inability to stand or walk for less than an hour in an eight-hour workday. AR 583. These limitations appear to relate to conditions (lumbroscacral strain and multiple disc herniations) that existed before Plaintiff's date last insured. AR 408. Consequently, Dr. Betz's opinion is relevant to assess Plaintiff's disability. See Vaile v. Berryhill, 2017 WL 2785331, at *3 (C.D. Cal. June 27, 2017) (finding a failure to consider doctor's opinion from after date last insured rendered ALJ's decision unsupported by substantial evidence because doctor's opinion related to treatment for conditions that existed before date last insured). Medical reports are inevitably rendered retrospectively, and the ALJ should not have disregarded Dr. Betz's relevant opinion solely on the basis that the opinion was rendered after the date last insured. Id.

Dr. Betz's assessed limitations were significant and probative, and the ALJ erred in not expressly considering those limitations and, if rejected, explaining the basis for rejecting the limitations. Such error was not harmless because, in failing to expressly consider Dr. Betz's limitations or incorporate those restrictions into Plaintiff's RFC or the hypothetical questions posed to

the VE, the VE's opinion regarding Plaintiff's ability to perform his past relevant work or other work lacks evidentiary value. See Russell v. Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (holding VE's opinion, based on hypothetical that omitted "significant limitations" on claimant's ability to perform certain activity, "had no evidentiary value"), abrogated on other grounds by Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir. 2001); Devery v. Colvin, 2016 WL 3452487, at *5 (C.D. Cal. June 22, 2016) (court could not determine harmlessness of ALJ's failure to discuss the reasons she rejected limitations because VE did not testify that a hypothetical person with those limitations could work); Dunlap v. Astrue, 2011 WL 1135357, at *6 (E.D. Cal. Mar. 25, 2011) (court could not determine harmlessness of error because it was unable to "determine how the VE would have responded if he had been given a hypothetical containing [examining physician]'s actual opinion.").

In sum, the Court finds the ALJ did not properly consider the opinion of Dr. Betz in determining Plaintiff's physical RFC.

**C.      Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

On remand, the ALJ shall fully and properly consider the opinions of Dr. Phillips and Dr. Betz. Because it is unclear, in light of the interrelated issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495.

15

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: October 12, 2018

_____
JOHN D. EARLY
United States Magistrate Judge